Gosnell, etc., v. City of Louisville, etc.

---

CASE 28—ACTION TO ENFORCE STREET ASSESSMENT—JUNE 21.

# Gosnell, etc., v. City of Louisville, etc.

APPEAL FROM JEFFERSON CIRCUIT COURT, COMMON PLEAS DIVISION.

It was held by this court on a former appeal (99 Ky., 380),
that apportionment warrants issued for street improvements
under the charter of cities of the first class were inoperative to
create liens upon abutting property to the extent they em-
braced future repairs to be made by the contractor.   On the re-
turn of the case the city of Louisville was made a defendant
and its liability for the amount estimated to be necessary to
cover the repairs was sought to be enforced.   The case thus
stood (1) against the abutting property owner for the orignial
cost of the improvement, and (2) against the city for the esti-
mated cost of anticipated repairs.   On this appeal the following
additional points were determined:

1. STREET IMPROVEMENTS—LIENS—INTEREST AND COSTS.—Where

| | |
|---|---|
| 104 | 201 |
| 106 | 736 |
| 104 | 201 |
| e111 | 59 |
| 111 | 510 |
| 111 | 521 |
| 111 | 526 |
| L111 | 688 |
| 104 | 201 |
| 112 | 442 |
| 104 | 201 |
| 114 | 335 |
| 115 | 367 |
| 115 | 6:9 |
| 104 | 201 |
| e116 | 950 |
| 104 | 201 |
| e116 | 950 |
| 104 | 201 |
| 119 | 507 |
| 104 | 201 |
| f123 | 693 |
| 123 | 695 |

the owner of property liable for street improvements had successfully resisted a suit to enforce a lien upon his property upon the ground that the amount charged against it was excessive because it included original construction and prospective repairs, he is not liable for interest on the assessment except from the time it was properly fixed by eliminating the prospective repairs;· nor is he liable for costs except those accruing after that date.

2. SAME—LIABILITY OF THE CITY.—The city is liable to the contractor for the amount estimated for prospective repairs in such a case provided such liability does not operate to increase the tax beyond the rate provided in sec. 157 of the Constitution or beyond the appropriation ,and levy provided for and mentioned in the sections of the act for the government of cities of the first class.

3. SAME—INTEREST AGAINST THE CITY—COSTS.—The contractor is not entitled to interest against the city for the entire amount of the improvement from the date of the original apportionment warrant. The city, however, is liable for the costs of ascertaining the correct amount to be apportioned to the property owners and to the city.

4. SAME—APPORTIONMENT BETWEEN CITY AND PROPERTY OWNER.—The ordinance having provided that the contractor should deposit bonds to the amount of ten per cent. of the original contract price of the entire work to be applied so far as need be to the necessary repairs of said work, the amount thus fixed should be taken as fixing the amount necessary for such repairs.

5. SAME—CONSTITUTIONAL LAW.—Street assessments are not taxes within the meaning of those provisions of the State Constitution requiring equality and uniformity of taxation.

6. SAME.—In the absence of allegation and proof, it will not be assumed on appeal that the personal liability by a city for repairs created a liability in excess of that authorized by the Constitution.

F. W. MORANCY FOR APPELLANTS.    (GRUBBS & MORANCY OF COUNSEL.)

1. The city of Louisville has authority to contract for construction, reconstruction and repairs of its streets, and is liable to the contractor for so much of the cost of same as the city has no au-

Gosnell, etc., v. City of Louisville, etc.

thority to charge against owners of abutting ground. Kentucky Statutes, secs. 2825, 2826, 2832, 2833, 2834; 99 Ky., 380, Fehler v. Gosnell; City of Louisville v. Leatherman, 99 Ky., 213; 18 Ky. Law Rep., 124; Caldwell v. Rupert, 10 Bush, 179; Louisville v. Nevin, 10 Bush, 549; Craycraft v. Selvage, 10 Bush, 696; Murphy v. City of Louisville, 9 Bush, 189; Kearney v. City of Covington, 1 Met., 339; Guthrie v. City of Louisville, 6 B. M., 575; City of Louisville v. Hyatt, 5 B. M., 199; Kaye v. Hall, 13 B. M., 455.

2. That an assessment by city of Louisville for street construction is not opposed to present Constitution of State of Kentucky. Constitution, secs. 157, 171, 172 and section 3, Bill of Rights; 106 Mass., 547, Plympton v. Boston Dispensary.

SAME ATTORNEY IN A SUPPLEMENTAL BRIEF FOR APPELLANTS.

Distinguished: Nicholasville Water Co. v. Nicholasville, 18 Ky. Law Rep., 592, and made the following additional citations: Ky. Stat., secs. 2742, 2783; State Const., sec. 157.

LANE & BURNETT ALSO FOR APPELLANTS.

1. The sections of the State Constitution which required uniformity of taxation did not forbid local assessment to pay for the improvement of streets or the construction of sewers. Levi v. City of Louisville, 97 Ky., 394; Louisville v. Leatherman, 18 Ky. Law Rep., 124; Louisville v. McNaughton, 44 S. W. R., 380; Hagan v. Supervisors, 47 Cal., 234; St. Joseph v. Owen, 110 Mo., 455; Vasser v. George, 47 Miss., 713; Hines v. Leavenworth, 3 Kan., 186; Brigut v. McCullough, 27 Ind., 223; King v. Portland, 2 Ore., 146; Beaumont v. Wilkes, 142 Penn., 198; Hill v. Higdon, 5 O. St., 243; Sterling v. Galt, 117 Ill., 1; Adams v. Fisher, 63 Tex., 651.

2. The error in the proceeding of the general council resulted in releasing the local government from any obligation to pay for the repairs, also resulted in releasing the contractor from the obligation to make them and thereafter the retention by the city of Louisville of the bonds of the contractor had no purpose to subserve and the contractor was entitled to the restitution.

3. It is clear that whatever liability the contractor is under to keep in repair is set out in the fourteenth section of the ordinance of February 5, 1894, and as that section limits the liability to the ten per cent. in bonds, it is clear that the court below erred in holding that by reason of the provisions of that section the

assessment against a contiguous property owner was increased or could have been increased to an amount exceeding ten per cent. And if this contention is true, it is clear that in reducing the apportionment of assessment warrants, twenty per cent. as laid down by the judgment appealed from, the court erred. The acceptance of the improvement by the Board of Public Works in the absence of fraud of collusion was conclusive proof that the contractor had completed the improvement in accordance with the ordinance and contract. Purdy v. Drake, 17 Ky. Law Rep., 819; Whitefield v. Hipple, 11 Ky. Law Rep., 386; Bogard v. O'Brien, 14 Ky. Law Rep., 648; Joyes v. Shadburn, 10 Ky. Law Rep., 493;~Amsby v. Jameson, 9 Ky. Law Rep., 325; Manly v. La-Grange, 7 Ky. Law Rep., 825; Boone v. Gleason, 5 Ky. Law Rep., 169; Harris v. Zable, 5 Ky. Law Rep., 114; Murray v. Tucker, 10 Bush, 240; Henderson v. Lambert, 14 Bush, 24.

4. On the evidence, it is clear that the judgment appealed from reducing the assessment of apportionment against the contiguous property owner twenty per cent. is erroneous and ought to be reversed.

5. For whatever amount the apportionment warrants were reduced as against a property owner, judgment ought to have been rendered against the city. City of Louisville v. Nevin, 10 Bush, 549; Craycraft v. Selvage, 10 Bush, 696; Caldwell v. Rupert, 10 Bush, 179; City of Louisville v. Leatherman, 99 Ky., 213; City of Louisville v. McNaughton, 19 Ky. L. R., 1695; Muldoon v. City of Louisville, 15 Ky. Law Rep., 233.

6. The defendant should not have been permitted to make additional defense after the return of this action. Davis v. McCorkle, 14 Bush, 746; Smith v. Brannin, 79 Ky., 114; Francis v. Wood, 81 Ky., 16; Hill v. Lancaster, 88 Ky., 338; Snapp v. Snapp, 87 Ky., 554; Hackworth v. Thompson, 3 Ky. Law Rep., 254; Burns v. Stephenson, 3 Ky. Law Rep., 754; Alsop v. Adams, 10 Ky. Law Rep., 362; Hall v. Rudd, 13 Ky. Law Rep., 205.

JOHN ROBERTS for appellees, Fehler, &c. (JOHN BARRET of counsel.)

1. The fraud alleged and proved vitiates the contract.

2. The court did not allow a sufficient deduction from the amount assessed, because of the imposition to keep the street in repair for five years.

Gosnell, etc., v. City of Louisville, etc.

3. The court should not have allowed interest on the amount re-apportioned from the date of the original apportionment.

Citations:  Ky. Stat., secs. 2832, 2839; Connor v. Clark, 15 Ky. Law Rep., 126; Parsons on Contracts (6th ed.) vol. 3, sec. 113; Trustees Church Home v. Morris, 99 Ky., 317; Boone v. Gleason, 4 Ky. Law Rep., 1001.

4. The rule laid down in Fehler v. Gosnell, 99 Ky., 380, should not be adhered to.  Boyd v. Milwaukee, 92 Wis., 458; s. c., 66 N. W. R., 103; Brown v. Jenks, 98 Cal., 10; People v. Mahar, 63 N. Y., 83.

SAME COUNSEL IN A SUPPLEMENTAL BRIEF FOR APPELLEES, FEHLER, &c.:

Citations:  McNaughton v. Louisville Industrial School of Reform, 44 S. W. R., 380; Zable v. Orphans' Home, 92 Ky., 89.

H. L. STONE FOR APPELLEE, CITY OF LOUISVILLE.

1. There is no liability on the part of the city. Ky. Stat., secs. 2834, 2816, 2820, 2821, 2901; Craycraft v. Selvage, 10 Bush, 696; Murphy v. City of Louisville, 9 Bush, 189; Louisville v. Henderson, 5 Bush, 515; City of Covington v. Boyle, 6 Bush, 204; City of Covington v. Dressman, 6 Bush, 210; Fehler v. Gosnell, 99 Ky., 380; State Constitution, secs. 157, 162; Louisville v. Nevin, 16 Ky. Law Rep., 438.

2. If any liability existed on the city for the cost of the general repairs, it could not exceed ten per cent. of the contract price.

JUDGE DuRELLE DELIVERED THE OPINION OF THE COURT.

Upon the former appeal of this case (Fehler v. Gosnell, 99 Ky. 394 [35 S. W. 1125]), the court held that the contract sued on for street improvements not only embraced a guaranty of faithful work, but also provision for repairs rendered necessary by other causes than defects in the contractor's work, and that these provisions caused the bids for the work to be higher than they would have been without such provisions, but that the contractor was still entitled to recover, except to the extent the defendant's assessment had been increased on that account.  As to the increase thus caused this court there held:  "The city had authority to contract for the

repairs of streets, provided such contracts were not made in violation of other requirements of the statute; and the contractor can recover of the city such portion of the contract price as was for repairs to the streets." On the trial of the case the appellees other than the city, which was not a party defendant at that time, filed a supplemental answer, by which it was alleged that vitrified brick streets were inferior, were not expected to last more than five years before a renewal would be required; that it would require fifty per cent. of the original cost of construction to keep such streets in repair five years, and that the contract on that account was increased fifty per cent. above what would have been a reasonable compensation for construction merely. It was further pleaded that the contract was secretly and fraudulently made, and the contractor fraudulently obtained information that his sealed proposal would be accepted before it was opened, and commenced work, and hauled and dumped from two hundred to three hundred loads of dirt upon the street before the proposal was opened. It may be stated here that upon the issue of fraud thus tendered the evidence was, by the trial court, considered insufficient, and in that finding we are disposed to concur. By an amended answer it was alleged that the making of streets with vitrified brick was an experiment; that no such streets had been in existence as long as five years, and nothing was known of their durability; and the right of the council to experiment, and put the burden thereof upon appellees, was denied. By a second amended answer it was alleged that the amounts apportioned against appellees were greatly more than fifty cents on the $100 worth of property within the fourths of squares upon which the assess-

ment was made; that some of the land assessed was improved and some unimproved; that there was personal property within the limits of the assessment which was taxable; that the ordinance and contract relieved from the taxation imposed all such improvements and personalty; and that sections 71 and 75 of the act for the government of cities of the first class, approved July 1, 1893, are in violation of section 3 of the bill of rights of the Constitution and of sections 157, 171, 172, 174 and 181 of the present Constitution, in not providing for an assessment of all taxable property within the taxing district according to its fair cash value, the entire expense of the street construction being assessed upon the land alone; and that the exemption from this assessment of the improvements the personal property within the taxing district is in violation of the fourteenth amendment of the Federal Constitution. After the case had been submitted, the submission was set aside, and an amended petition permitted to be filed, making the city of Louisville a party defendant, alleging that by the contract sued on the city obligated itself that the contractor, Gosnell, should be paid in accordance with the terms thereof, and seeking to recover against the city for the amount of the original apportionment warrants, to the extent that they might be held not enforcible against the property holders. The city filed demurrer to the petition as amended, and by the judgment the demurrer was sustained. The court made a reduction of 20 per cent. of the apportionment warrants, and gave judgment to the contractor for 80 per cent. thereof, with interest from the date of the warrants. From this judgment an appeal was taken, both by the contractor and the property holder.

On behalf of the contractor it is claimed that, what-

ever rule might be adopted in estimating the amount of
the contract which was for repairs, judgment should
have been given against the city for that amount, in
accordance with the expression quoted from the opinion
upon the former appeal.  On behalf of the city it is in-
sisted that in no event can any judgment be rendered
against it for that portion of the contract price which
might be determined to have been for repairs, but that,
if the city is liable at all for repairs, the contract must
be so construed as to fix the amount for that purpose
at not exceeding 10 per cent. of the entire contract price.
On behalf of the property holders it is claimed:  First,
that the contract was fraudulent; second, that it was
error to allow interest from the date of the original ap-
portionment, but interest should not have gone except
from the date of the reapportionment, when correctly
made; third, that it should have been adjudged that 45
per cent. of the contract price was for the repairs con-
tracted to be made during the five years; and, fourth, that
the charter provisions in reference to assessments for
street improvements are in conflict with both the State
and Federal Constitutions, and void.

The question of fraud has been already considered.  By
section 2832, Ky. Stat., the board of public works was
required to make the apportionment, and by section 2839
it was provided that a lien existed from the date of the
warrant.  The apportionment, as we have held, was erro-
neous; and until corrected by the courts or the council
it was impossible for the property holder to ascertain
for what amount he was liable.  It is manifest, therefore,
that it was inequitable to charge the property holder with
interest until there was an ascertained liability against
him or his property, by the payment of which the lien

Gosnell, etc., v. City of Louisville, etc.

could be discharged. In Conner v. Clark, 15 Ky. Law Rep. 126, it was held that parties ought not to be held liable for interest until the amount they owe is ascertained with certainty; and in that case, as the amount which the appellants should pay was not ascertained until judgment rendered, it was not error to refuse to adjudge interest against them. And in Boone v. Gleason, 4 Ky. Law Rep., 1001, the Superior Court held that the property holder was liable for neither interest nor costs until the apportionment had been made according to the principles established by law. In this view we concur. Neither interest nor costs should have been allowed against the property holder, except from the time the amount he was required to pay was so fixed that he could discharge it. Nor should interest upon the whole amount of the contract price be allowed against the city, for, while the rule may seem harsh, the contractor must be assumed to have entered into the contract with his eyes open as to its provisions and their enforcibility. The contract was not made by the property holder, but for him. As to that portion of the contract price for which he is responsible, his debt was not matured by reason of an erroneous apportionment, and was not payable until maturity. But for that portion which was properly assessable against the property holder the contractor must look to him alone. We think the same reasoning is applicable to interest upon such part of the contract price as the city may be held responsible for, though not to the costs of ascertainment of the amount, i. e. of obtaining a reapportionment by the courts, for the city became a party to the contract of its own will, and not *in invitum*, as in the case of the property holder.

[14]

A large amount of testimony has been taken upon the question of what proportion of the contract price was for the repairs for five years, the estimates given in the evidence varying from nothing to fifty per cent. The contractor himself testifies that he made no allowance for repairs. Other witnesses, more or less expert, make widely varying estimates. But, after considerable consideration and discussion by the entire court, we have reached the conclusion that the contract itself furnishes the only safe means of ascertainment of what proportion of the contract liability was incurred for construction and what proportion for repairs. Under the ordinance, the contractor was required to guaranty the faithful performance of the work. Surety for such performance according to the ordinance was required. It was further provided, that: "The pavement therein specified, and the materials composing the same, shall be kept in good repair for the period of five years from the completion of the work and its acceptance by the board of public works; and to protect the city as to the character of said work and material, and such repairs as may be needed, the board of public works to be the judge, the contractor shall deposit bonds * * * amounting to ten per cent. of the original contract price of the entire work, * * * to be applied, so far as need be, in the necessary repairs of said work." The performance of the original construction of the work was provided for by a contract with surety. That performance thus guarantied was complete upon the acceptance of the work. While, even upon careful examination, the language used is not entirely free from doubt, it seems a fair construction that the deposit was required for the repairs necessary, the acceptance of the work being held to

Gosnell, etc. v. City of Louisville, etc.

be evidence of its performance in accordance with the terms of the contract. The parties to this contract can not fairly be assumed to have contemplated that the repairs would amount to a greater sum than ten per cent. of the entire price. The bid must be assumed to have been made with reference to the ordinance, and the contract which would be required to be entered into containing this provision; and while it is a more doubtful construction to say that it was not contemplated that the amount for repairs might be less than ten per cent. of the entire cost, owing to the fact that the deposit is required 'to protect the city *as to the character of said work and material*, and such repairs as may be needed," nevertheless provision had been already made that the character of the work and the material used should be in accordance with the ordinance, and not only by the contract with surety, but by the statutory requirement of acceptance by the city before the contractor had any claim for compensation; and it may be plausibly argued that the repairs secured by the deposit of bonds were not only such as might result from accident or other extrinsic causes, but such repairs as might be rendered necessary by the material selected by the city for making the street, and the manner in which the city had, by ordinance, required the material to be used. That is to say, if the city selected material for a street, which, as required to be laid by the ordinance concerning streets, would last less than five years, the amount deposited was intended to cover the cost of repairs necessary to make it last for that period, and was a liquidated sum for that purpose, in contemplation by the parties when they entered into the contract. We are of opinion, therefore, that, having applied the amount fixed as a deposit to

secure the repairs as fixing the maximum amount, in contemplation of the parties, contracted to be paid for reconstruction under the contract, it should also be applied as fixing the minmum amount.

It is earnestly insisted that there is no liability upon the city for the amount of the contract price which is ascertained to be for reconstruction, notwithstanding the jurisdiction of the city to contract for repairs generally. This claim is urged upon several grounds. Section 71 of the act for the government of cities of the first class, approved July 1, 1893, (section 2834, Ky. Stat.), providing that in no event shall the city be liable for original improvement, without the right to enforce it against the property receiving the benefit, has no application, for we have expressly decided that this part of the contract price was not for original improvement, but for reconstruction. Counsel for the city also relies upon the following sections of the Kentucky Statutes: Section 2981, providing for a subdivision of the annual levy into levies for various purposes, including "a levy for street repairs;" section 2816, providing that the amount levied shall be collected and carried to the credit of the executive boards, and shall not be diverted from said boards, or used by the mayor or general council for any other purpose; section 2820, providing that all obligations beyond existing appropriations shall be void; section 2821, providing a penalty for city officers issuing bonds, etc., for the payment of money upon the city, beyond the unexpended balance of any appropriation made for such purpose; and section 2901, forbidding the audit of any claim against the city unless the amount required for the payment of the same shall have been appropriated for that purpose by the general council. Section 157 of the Constitution,

fixing a limit upon the indebtedness of the city, is also relied on, as well as section 162, forbidding the payment of a claim against a municipality under any contract made without express authority of law. In response to this it may be said that the city has authority to contract with regard to street repairs, and, having so contracted, we can not assume that it has done so to such an extent as to increase the tax rate beyond the limit provided in section 157 of the Constitution, or beyond the appropriation and levy provided for and mentioned in the sections of the act for the government of cities of the first class, above referred to. On the contrary, we must assume that in acting upon a subject with respect to which it had jurisdiction to act it acted within the constitutional limitation, and within its revenue as fixed and limited by the statutes quoted. We see no reason why the city, if not exceeding the amount of its revenue which it is authorized to expend, may not expend its money for objects the benefit of which it will receive in subsequent years. The demurrer by the city to the petition should, therefore, have been overruled.

This brings us to the consideration of the main contention of the property holders upon this appeal, namely, that the burden imposed by the assessment under consideration is a tax, within the meaning of section 157 of the Constitution, and is in excess of the rate of taxation permitted by that section. Further, that under section 172 all property not exempted by the Constitution is taxable property, none of which can be exempted under section 3 of the bill of rights, except as provided in the Constitution; and that under section 171, providing that taxes shall be uniform upon all property subject to taxation within the territorial limits of the authority levying

the tax, and section 174, providing that all property shall be taxed in proportion to its value, an assessment for street improvements, upon the realty alone, by the square foot, is forbidden, because it exempts from assessment all improvements and personalty within the territorial limits of the property against which the assessment is made. It is further claimed that the imposition of the entire burden of constructing a street upon the naked land exempts the improvements and personal property within the square from taxation, and denies to the owners of unimproved realty the equal protection of the laws guarantied by section 1 of the fourteenth amendment to the Constitution of the United States. These propositions have been most earnestly and ably argued by counsel. But, while recognizing the force of the argument made, we are clearly of opinion that in using the words "tax" and "taxation" in the sections of the Constitution referred to the framers of that instrument, and the people who voted for its adoption, referred to the usual and customary mode of providing public revenue, and enforcing the duty that the citizen, as such, owes to the State to support and carry on the State government; and we do not think that it was intended that those sections should be held applicable to local assessments for the payment of which the property holder was supposed to be compensated by the special benefit received by his property. The distinction between a tax and a local assessment has been uniformly recognized by the courts of this State; and while the latter is, in one sense, a tax, being the imposition of a burden upon the citizen and an involuntary charge upon his property, it is not a tax in the sense contemplated by the framers of the Constitution in the sections referred to.

Without taking time to consider in detail the authorities of other States in which the question has arisen whether, granting that these special levies for local improvement are taxation, they come within a general provision on the subject of taxation similar to those embodied in the Constitution of Kentucky, and in which it was held that "assessments of this character were not such taxation as was contemplated by the general terms which the Constitution employed" (Cooley, Const. Lim. [6th Ed.] p. 613 et seq.), it may be said that the question in this State is no longer an open one.    In Holzhauer v. City of Newport, 94·Ky. 407 [22 S. W. 754], in an opinion by Judge Hazelrigg, it was said:    "It is thought, however, that the method of assessment provided for in the acts in question is in violation of sections 171 and 174 of the Constitution.    These sections require uniformity of taxation, and taxation according to value.    While they were not in the former Constitution, the principles contained therein have always been recognized as the basis of all taxation.    They announce nothing new, but are merely declaratory of what was always the law of taxation in this State.    The method of assessment provided by these acts was held to be in accord with the old Constitution in the case of Maddux v. City of Newport, *supra* [14 S. W., 957], and we adhere to that opinion." In Levi v. City of Louisville, 97 Ky. 409 [30 S. W. 977], this court, through Chief Justice Pryor, said that, if the determination of that case "involved a question only as to local improvement, and an assessment for such a purpose, we would have but little trouble in holding that the Constitution did not affect such questions, when the burden is imposed by reason of local benefits."    And in McNaughton v. Louisville Industrial School, 19 Ky. Law Rep.,

1695 [44 S. W., 380], this court through Judge Guffy said: "Taxation, in its legal signification, is essentially different from a charge for street improvements, and the case of Zabel v. Orphans' Home, 92 Ky. 89 [17 S. W. 212], is conclusive of this question." In the case of Zabel v. Orphans' Home, there are cited a number of authorities recognizing the distinction between taxation in its general sense and the imposition of local assessments for local improvements. Those authorities must be presumed to have been considered when the language employed in the Constitution was determined upon, and the language adopted must be presumed to have been used with reference to the distinction there made. While the court might have reached a different conclusion had the question been a new one, we feel bound to recognize the distinction made in the authorities arising under the old Constitution as well as those since the adoption of the new one. We conclude that the sections of the act for the government of cities of the first class are constitutional; but, for the reasons before stated, the judgment must be reversed, and cause remanded for further proceedings consistent with this opinion.