RENDERED: AUGUST 28, 2020; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2019-CA-000650-MR

JAYNE KISSLING TANNENBAUM,
PERSONAL REPRESENTATIVE OF THE
ESTATE OF FRED KISSLING, JR.                                    APPELLANT

APPEAL FROM FAYETTE CIRCUIT COURT
v.            HONORABLE KIMBERLY N. BUNNELL, JUDGE
ACTION NO. 18-CI-02885

LEXINGTON-FAYETTE URBAN COUNTY
GOVERNMENT, DIVISION OF PLANNING
COMMISSION; MICHAEL OWENS; MIKE
CRAVENS; PATRICK BREWER; WILLIAM
WILSON; FRANK PENN; WILL BERKLEY;
KAREN MUNDY; CAROLYN PLUMLEE;
LARRY FORESTER; CAROLYN RICHARDSON;
HEADLEY BELL; THE RITA J. SATTERLY
TRUST 3-27-18; THE ESTATE OF ROBERT
LESLIE ROSENBAUM, DECEASED, BY HIS
PERSONAL REPRESENTATIVE, IF ANY; LINDA
GOSNELL; AND THE NORTHSIDE NEIGHBORHOOD
ASSOCIATION, INC.                                                APPELLEES

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  CLAYTON, CHIEF JUDGE; ACREE AND LAMBERT, JUDGES.

CLAYTON, CHIEF JUDGE:  Jayne Kissling Tannenbaum ("Tannenbaum"), as

the personal representative of the Estate of Fred Kissling, Jr. (the "Estate"), appeals

the Fayette Circuit Court's affirmation of the decision of the Lexington-Fayette

Urban County Planning Commission (the "Planning Commission") to revoke a

recorded plat which subdivided a portion of the Estate's real property into two

separate parcels.  Tannenbaum also appeals from the circuit court's dismissal of

the Estate's petition for declaratory judgment.

Upon close review of the record and applicable law, we affirm.

## BACKGROUND

Over forty years ago, at a January 1979 meeting, the Planning

Commission approved a plat which subdivided a lot - known as 444 West Third

Street and owned by Mary Jayne Gallaher - into two tracts (the "1979 Plat").  The

1979 Plat provided for an access easement over an adjoining tract of land owned

by another party.

On February 15, 1979, the Northside Neighborhood Association (the

"NNA") filed a complaint, appeal, and petition for declaration of rights in the

Fayette Circuit Court against Gallaher, the Planning Commission, and the Planning

Commission's then-current members (the "1979 Appeal"). In the 1979 Appeal, the NNA argued that the Planning Commission's approval of the 1979 Plat was erroneous because it did not have the authority to grant a variance from the requirements of certain zoning ordinances in effect at that time.

For unknown reasons, both Gallaher and the Planning Commission signed the relevant certifications on the 1979 Plat in February and March of 1979 and caused the 1979 Plat to be recorded with the Fayette County Clerk on March 23, 1979, all while being party-defendants to, and during the pendency of, the 1979 Appeal. None of the litigants filed a *lis pendens* as permitted by Kentucky Revised Statutes (KRS) 382.440.

In January of 1983, the Fayette Circuit Court entered an opinion in the appeal (the "1983 Opinion") holding that "[t]he action of the [Planning] Commission in subdividing the property is reversed." In so reversing, the court found that the Planning Commission did not have the power to grant a variance to its own regulations where such action effectively disregarded or amended a zoning ordinance. The court further noted that "the granting of an exception in this case would ultimately reduce open spaces and increase congestion" and that "[t]here was testimony which indicated that the granting of this variance would harm the historical character of the neighborhood and constitute piece-meal development." Therefore, the court concluded that, even if the Planning Commission had the

-3-

authority to grant the variance, its decision to do so was not backed by substantial evidence.

While the 1983 Opinion reversed "the action of the Planning Commission in subdividing the property," the 1983 Opinion did not specifically reference the 1979 Plat or direct that the 1979 Plat be revoked. The 1983 Opinion was not appealed by any of the parties. Further, again for reasons not revealed by the record, neither the 1983 Opinion nor any other evidence of the circuit court's reversal of the Planning Commission's action in subdividing the property was ever noted by or reflected in the records of the Fayette County Clerk.

Gallaher passed away in May of 1999 and left the subject property to her husband, Fred Kissling, in trust, with the property eventually being deeded to Transylvania University. Sometime after Kissling's death, the Estate sued Transylvania University and, as part of a settlement agreement, the Estate purchased the property from Transylvania University for $325,000.00.

In 2018, Tannenbaum, as the personal representative of the Estate, attempted to sell the property as two separate tracts pursuant to the 1979 Plat. After a public hearing in July of 2018, the Planning Commission voted to revoke the 1979 Plat based on the 1983 Opinion's reversal of the Planning Commission's actions in subdividing the property. The Planning Commission's statements at the hearing reflected that, based on the recommendations of its legal team, the

Planning Commission felt that it had no alternative but to comply with the 1983 Opinion as a valid court order that disallowed the subdivision of the property in the manner reflected in the 1979 Plat. The Planning Commission's revocation of the 1979 Plat was ultimately noted and recorded in the records of the Fayette County Clerk.

Tannenbaum subsequently filed an appeal in August of 2018 pursuant to KRS 100.347, a statute which provides for appeals from the actions of certain administrative agencies (the "2018 Appeal"). The 2018 Appeal requested that the Planning Commission's revocation of the 1979 Plat be reversed. Tannenbaum's primary arguments in favor of reversing the Planning Commission's revocation of the 1979 Plat included that the Planning Commission did not have the authority or jurisdiction to revoke the 1979 Plat, that the Planning Commission followed incorrect procedures at the July 2018 hearing, and that the 1983 Opinion could not be used as a basis for the Planning Commission's actions, as it was no longer an enforceable or valid opinion.

In the same document, Tannenbaum filed an original action under KRS 418.040 styled as a "Declaration of Rights" action (the "2018 Petition"). Tannenbaum primarily requested in the 2018 Petition that the circuit court declare that the Planning Commission lacked jurisdiction to revoke the 1979 Plat, that the Estate did not receive proper notice or hearing of the Planning Commission's

decision, that the 1983 Opinion was unenforceable, and that the 1983 Opinion had been waived or was estopped from being enforced due to the passage of time.

The circuit court held a hearing on the 2018 Appeal and the 2018 Petition in January 2019, with all parties represented by counsel. Thereafter, by written order entered on February 26, 2019, the circuit court found that, under Kentucky case law, when a specific statute provides an exclusive remedy, then declaratory relief is not appropriate. Therefore, the court found that, because the 2018 Appeal and the 2018 Petition requested the same relief, the 2018 Petition was unnecessary and should be dismissed.

Additionally, the circuit court found that the 1983 Opinion was valid and was not null, void, or unenforceable due to the passage of time. The court noted that it knew of no legal precedent supporting the claim that an appellate ruling rendered by a court of law could become stale, void, or unenforceable due to the passage of time when no appeal is taken from, nor modification made, to such an order. Therefore, the circuit court found that the Planning Commission's decision was based on a valid ruling of the court, was not arbitrary, and was thereby affirmed. Tannenbaum filed a motion to reconsider, which the circuit court denied, followed by a timely appeal to this Court.

Other facts will be discussed as they relate to the particular arguments raised in this appeal.

## ISSUES

Although Tannenbaum claims many issues and sub-issues on appeal, the primary focus of Tannenbaum's arguments are as follows: 1) that the Planning Commission's actions in revoking the 1979 Plat were arbitrary because they were in excess of the Planning Commission's statutorily-granted powers; (2) that the Planning Commission's actions in revoking the 1979 Plat were arbitrary because they violated the Estate's procedural due process rights; (3) that the circuit court erred in finding that the Planning Commission's revocation of the 1979 Plat was not arbitrary; and (4) that the circuit court erred when it dismissed the 2018 Petition and found that the 2018 Appeal was sufficient to address the Estate's claims.

## ANALYSIS

### a. Standard of Review

This appeal concerns the administrative action of an agency. Appellate review of an administrative agency's action examines whether the agency's action was arbitrary. *Board of Comm'rs of City of Danville v. Davis*, 238 S.W.3d 132, 135 (Ky. App. 2007). An agency's action is arbitrary when it: (1) is in excess of the agency's granted powers, (2) fails to afford a party procedural due process, or (3) makes a determination not supported by substantial evidence.

*Hilltop Basic Resources, Inc. v. County of Boone*, 180 S.W.3d 464, 467 (Ky. 2005) (citation omitted).

A reviewing court will defer to an agency's factual findings that are supported by substantial evidence and will assess whether the agency correctly applied the law under a *de novo* standard of review. *Davis*, 238 S.W.2d at 135.

### b. Discussion

#### 1. Was the Planning Commission's Decision to Revoke the 1979 Plat an Action Taken in Excess of Its Granted Powers?

The Planning Commission is an administrative agency created by statute and has "only those powers expressly provided by statute." *Oldham County Planning and Zoning Comm'n v. Courier Communications Corp.*, 722 S.W.2d 904, 907 (Ky. App. 1987). Tannenbaum first argues that the Planning Commission's decision to revoke the 1979 Plat was contrary to three specific statutes and, therefore, that such decision was in excess of the Planning Commission's granted powers. The three statutes cited by the Estate are KRS 413.090, KRS 100.285, and KRS 382.440, and we will examine the Estate's claims under each statute.

#### A. KRS 413.090

The first statute invoked by Tannenbaum is KRS 413.090, which provides that certain actions "shall be commenced within fifteen (15) years after the cause of action first accrued[.]" Such actions include "[a]n action upon a

judgment or decree of any court of this state" and "[a]n action upon an . . .

injunction . . . , or to obey or perform an order or judgment of court in an action[.]"

KRS 413.090(1) and (4).

Here, Tannenbaum argues that the 1983 Opinion ceased to be

enforceable in January of 1998, or fifteen years after it was entered and, therefore,

that the Planning Commission's revocation of the 1979 Plat was arbitrary because

it could not enforce, obey, or perform the 1983 Opinion because of the statute of

limitations provided for in KRS 413.090.

> As stated by the Kentucky Supreme Court, it is an appellate court's
>
> duty when interpreting statutes to give effect to the General Assembly's intent, but "no rule of interpretation . . . require[s] us to utterly ignore the plain . . . meaning of words in a statute." In fact, "[t]he plain meaning of the statutory language is presumed to be what the legislature intended, and if the meaning is plain, then the court cannot base its interpretation on any other method or source." We "ascertain the intention of the legislature from words used in enacting statutes rather than surmising what may have been intended but was not expressed." In other words, we assume that the "[Legislature] meant exactly what it said, and said exactly what it meant." Only "when [it] would produce an injustice or ridiculous result" should we ignore the plain meaning of a statute.

*Revenue Cabinet v. O'Daniel*, 153 S.W.3d 815, 819 (Ky. 2005) (citations omitted).

In this case, we cannot ignore the plain meaning of the words "action"

and "commenced" in KRS 413.090. Those words are clearly describing a situation

wherein a party is attempting to file – or "commence" – an "action" outside of the applicable time period described in the statute. On the contrary, here, the simple fact is that the Planning Commission did not "commence" an "action," but rather revoked the 1979 Plat under the belief that it was required by the 1983 Opinion to do so. Indeed, "the . . . fact that . . . an action cannot now be based upon [a judgment] does not alter [such judgment's] force as evidence of the facts which it determined." *Creech v. Jenkins*, 123 S.W.2d 267, 269 (Ky. 1938). By its plain language, KRS 413.090 is not applicable in this situation.

### B. KRS 100.285

Tannenbaum next claims that the Planning Commission acted in excess of its granted powers in revoking the 1979 Plat because it did not follow the procedure outlined in KRS 100.285, which states in part:

> (1) Upon application of all persons owning land comprising a subdivision, the planning commission may revoke the approval of a subdivision plat, including all dedications of public facilities, easements and rights-of-way.

> (2) Before any plat shall be revoked, all owners shall, as part of their application for revocation, state under oath that no person has purchased a lot shown on the plat.

Therefore, Tannenbaum argues that because no application to revoke the 1979 Plat was filed, and because the Estate did not join the revocation of the 1979 Plat as

-10-

described in the foregoing procedure, the Planning Commission did not have jurisdiction to revoke the 1979 Plat.

However, KRS 100.285 also contains the following language:

> (4) The remedy provided in this section *is in addition to all other remedies provided by law* and shall not impair the right of the [Planning Commission] *or any interested party from filing an action in Circuit Court for such relief as may be appropriate*.

(Emphasis added.)

Again, when reviewing the plain statutory language, we find that this situation falls squarely under the situation described in subsection (4) above. The NNA and other property owners whose property adjoined the subject property – or "interested parties" – filed the 1979 Appeal specifically asking the circuit court to rule on the legality of the Planning Commission's actions in approving the 1979 Plat. The circuit court reversed the Planning Commission's action in subdividing the subject property and, in response to the court's reversal, albeit delayed, the Planning Commission revoked the 1979 Plat. We find the foregoing situation to be "a remed[y] provided by law" based on the plain language of KRS 100.285(4).

## C. **KRS 382.440**

Tannenbaum next argues that Kentucky's lis pendens statute barred the Planning Commission's revocation of the 1979 Plat. Such statute, KRS

-11-

382.440, states the following:

> (1) No action . . . or any other proceeding . . .
> commenced or filed in any court of this state, in which
> the title to, or the possession or use of . . . real property,
> or any interest therein, is in any manner affected or
> involved, nor any order nor judgment therein, nor any
> sale or other proceeding . . . shall in any manner affect
> the right, title or interest of any subsequent purchaser . . .
> such real property, or interest for value and without
> notice thereof, except from the time there is filed, in the
> office of the county clerk of the county in which such
> real property . . . lies, a memorandum[.]

Under Kentucky law, "[l]is pendens is defined as a notice, recorded in the chain of title to real property, ... to warn all persons that certain property is the subject matter of litigation, and that *any interests acquired during the pendency of the suit are subject to its outcome*." *Greene v. McFarland*, 43 S.W.3d 258, 260 (Ky. 2001) (emphasis added) (internal quotation marks, brackets, and citation omitted). As explained by a panel of this Court in *Cumberland Lumber Company v. First and Farmers Bank of Somerset, Inc.*, 838 S.W.2d 403 (Ky. App. 1992), the purpose and effect of the *lis pendens* doctrine:

> is to keep the subject-matter of the litigation within the
> control of the court, and to render the parties powerless to
> place it beyond the reach of the final judgment.
>
> . . . .
>
> *Whether, however, [one acquiring an interest
> pendente lite] . . . has any actual notice of its pendency or
> not, the judgment, when rendered, must be given the
> same effect as if he had not acquired his interest, or as if*

-12-

> *he had been a party before the court from the commencement of the proceeding.  <u>His interests are absolutely concluded by the final determination of the suit</u>.*

*Id*. at 405 (emphases added) (citation omitted).  Under Kentucky law, "one who acquires an interest in property, whether by purchase, lien or other encumbrance, after the filing of a lis pendens notice, takes that interest subject to the results of the litigation."  *Id*.  Importantly, "[t]he statute does not purport to create any additional rights that a party might have in the property."  *Leonard v. Farmers & Traders Bank, Shelbyville*, 605 S.W.2d 770, 772 (Ky. App. 1980).

Therefore, based on the foregoing cases, even if any of the parties to the 1979 Appeal had filed a *lis pendens*, the Estate was still bound by the circuit court's ultimate judgment, and took the property subject to the results thereof.  Essentially, the Estate is arguing that KRS 382.440 can create additional rights in the property other than those it would have had at the time that the circuit court rendered the 1983 Opinion.  Such argument is in contravention of the purpose behind the *lis pendens* statute.  Therefore, we cannot say that the failure of any party to file a *lis pendens* notice during the pendency of the 1979 Appeal leads to the conclusion that the Planning Commission acted in excess of its granted powers in revoking the 1979 Plat.

### D. Other Arguments

Tannenbaum next argues that the Planning Commission lacked jurisdiction to affect the Estate's vested property rights under various provisions of the Kentucky Constitution. In this case, however, we do not agree that the Planning Commission was purporting to act in a quasi-judicial capacity, but rather was acting under KRS 100.285(4) to remedy the situation pursuant to, and in accordance with, the 1983 Opinion.

Further, Tannenbaum argues that the doctrines of laches and estoppel barred the Planning Commission from revoking the 1979 Plat. The doctrine of laches is "based on the injustice that might or will result from *the enforcement of a neglected right.*" *City of Paducah v. Gillispie*, 115 S.W.2d 574, 575 (Ky. 1938) (emphasis added) (citations omitted). The case *sub judice* is not a situation where the Planning Commission had a right that it chose to ignore or failed to assert. Rather, as previously discussed, it was proceeding with a remedy under the revocation statute in response to the 1983 Opinion.

### 2. Was the Planning Commission's Revocation of the 1979 Plat in Violation of the Estate's Procedural Due Process Rights?

Tannenbaum next makes various arguments concerning the Estate's rights to procedural due process, including that the Planning Commission failed to

-14-

give sufficient notice of the hearing to both the Estate and to all other interested parties, failed to allow the Estate to confront and cross-examine adversaries at the July 2018 hearing, failed to adequately inform itself of its own rules and to properly apply the law, and failed to grant the Estate's motion for a continuance.

In the administrative setting, "[t]he fundamental requirement of procedural due process is simply that all affected parties be given 'the opportunity to be heard at a meaningful time and in a meaningful manner.'" *Hilltop Basic Resources*, 180 S.W.3d at 469 (quoting *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976)). Procedural due process in the administrative or legislative setting has been understood to include "a hearing, the taking and weighing of evidence if such is offered, a finding of fact based upon a consideration of the evidence, the making of an order supported by substantial evidence, and, where the party's constitutional rights are involved, a judicial review of the administrative action." *Morris v. City of Catlettsburg*, 437 S.W.2d 753, 755 (Ky. 1969) (citation omitted).

In this case, the Planning Commission held a hearing in July of 2018, of which the Estate received notice and at which the Estate was represented by counsel. At the hearing, the Planning Commission allowed the Estate's counsel to make comprehensive statements expressing the Estate's concerns about the revocation of the 1979 Plat and the Estate furnished extensive exhibits to the

-15-

Planning Commission which were included in the record. The Planning Commission, after asking relevant questions and stating that it was acting under the guidance of its legal staff, based its decision to revoke the 1979 Plat on the 1983 Opinion, which we have already discussed was not in excess of the Planning Commission's granted powers. Moreover, the Estate was provided with judicial review of the administrative action. Under the circumstances, we find that the Estate was given "the opportunity to be heard at a meaningful time and in a meaningful manner." *Hilltop Basic Resources*, 180 S.W.3d at 469 (citation omitted).

### 3. **Did the Circuit Court Err by Finding that the Planning Commission Did Not Act Arbitrarily When it Revoked the 1979 Plat?**

Tannenbaum next argues that the circuit court erred in affirming the Planning Commission's revocation of the 1979 Plat. To the extent that Tannenbaum's arguments concerning the circuit court's errors are duplicative of those regarding the alleged errors of the Planning Commission, we cite to our discussion in Section 1 of this Opinion discussing such claimed errors and therefore affirm the circuit court as to those issues.

Tannenbaum further argues that the circuit court erred to the extent that it interpreted or clarified the 1983 Opinion to include a directive to revoke the

-16-

1979 Plat. Specifically, Tannenbaum cites to an unpublished case in which the circuit court entered an order clarifying a previous order and stating that interest on a judgment should be interpreted as compounded rather than simple. *DLX, Inc. v. Fox Trot Properties, LLC*, No. 2008-CA-002003-MR, 2009 WL 3400659, at *1-2 (Ky. App. Oct. 23, 2009).[1] A panel of this Court held that the circuit court had no jurisdiction to amend its order under the circumstances of the case, stating that "[a]fter the ten-day period [under CR 52.02] expired . . . , the judgment became final, the circuit court lost jurisdiction once its judgment became final, and the circuit court was without jurisdiction to reconsider or amend its order." *Id*. at *2 (citation omitted).

In this case, however, we disagree with Tannenbaum's characterization of the current situation as being analogous to the circuit court being without jurisdiction to reconsider or amend its own order. This situation is distinguishable because the circuit court was acting in an appellate capacity under KRS 100.347 rather than as a trial court subsequently amending its own order. Tannenbaum cannot on one hand request that the circuit court conduct an appellate analysis under KRS 100.347 concerning the 1983 Opinion as the basis for the

---

[1] This unpublished opinion is cited pursuant to Kentucky Rules of Civil Procedure (CR) 76.28(4)(c).

Planning Commission's actions, and on the other hand argue that it was inappropriate for the circuit court to interpret or analyze the 1983 Opinion.

## 4. Did the Circuit Court Correctly Dismiss the 2018 Petition for Failure to State a Claim?

Tannenbaum's final argument is that the circuit court erred when it dismissed the 2018 Petition for failure to state a claim. The circuit court found that KRS 100.347 already provided Tannenbaum with the mechanism by which to pursue her appeal and assert her claims as to the Planning Commission's decision revoking the 1979 Plat.

KRS 100.347(2) states that "[a]ny person or entity claiming to be injured or aggrieved by any final action of the planning commission shall appeal from the final action to the Circuit Court of the county in which the property, which is the subject of the commission's action, lies." Generally, "[b]ecause [KRS 100.347] affords an adequate remedy, a separate declaratory judgment action is not appropriate." *Warren County Citizens for Managed Growth, Inc. v. Board of Comm'rs of City of Bowling Green*, 207 S.W.3d 7, 17 (Ky. App. 2006) (citations omitted).

Tannenbaum relies on *Greater Cincinnati Marine Service, Inc. v. City of Ludlow*, 602 S.W.2d 427 (Ky. 1980) for the proposition that, in an action containing a statutory appeal under KRS 100.347 and a petition for declaratory

-18-

judgment, the declaratory judgment petition is permitted. The Kentucky Supreme Court made it clear, however, that they reached their conclusion because the appellant's filing, "judged by its content, [*was*] *far more than an appeal under the aegis of KRS 100.347(2)*." *Id*. at 429 (emphasis added).

Therefore, we must examine the specific language contained in the 2018 Petition to determine whether it is beyond "the aegis of KRS 100.347(2)." Primarily, the relief requested by Tannenbaum is that the Estate "is entitled to a declaratory judgment *that the 1983 Opinion is null, void and unenforceable*," which is essentially the same relief contained in the 2018 Appeal. Tannenbaum further requests that the court analyze the revocation statute under KRS Chapter 100, requests that the court declare that the Planning Commission did not have jurisdiction to revoke the 1979 Plat, and includes procedural due process arguments regarding notice and a hearing. Tannenbaum is thus in a situation where the 2018 Petition, judged by its contents, is not "far more than an appeal under . . . KRS 100.347(2)." *Id*. Therefore, the circuit court was correct in dismissing the 2018 Petition, as Tannenbaum should not be permitted to pursue an action for declaratory judgment to assert claims which were already asserted in the 2018 Appeal pursuant to KRS 100.347.

## CONCLUSION

For the foregoing reasons, we affirm the Fayette Circuit Court's order.

-19-

ALL CONCUR.


BRIEFS FOR APPELLANT:

Wayne F. Collier
Shelby C. Kinkead, Jr.
Melissa H.P. Palmer
Lexington, Kentucky


ORAL ARGUMENT FOR
APPELLANT:

Wayne F. Collier
Lexington, Kentucky

BRIEF AND ORAL ARGUMENT
FOR APPELLEES LEXINGTON-
FAYETTE URBAN COUNTY
GOVERNMENT, DIVISION OF
PLANNING COMMISSION;
MICHAEL OWENS; MIKE
CRAVENS; PATRICK BREWER;
WILLIAM WILSON; FRANK PENN;
WILL BERKLEY; KAREN MUNDY;
CAROLYN PLUMLEE; LARRY
FORESTER; CAROLYN
RICHARDSON; AND HEADLEY
BELL:

Tracy W. Jones
Lexington, Kentucky

BRIEF FOR APPELLEE THE RITA
J. SATTERLY TRUST 3-27-18:

Samuel G. Carneal
Stefan J. Bing
Lexington, Kentucky

ORAL ARGUMENT FOR
APPELLEE THE RITA J.
SATTERLY TRUST 3-27-18:

Stefan J. Bing
Lexington, Kentucky

BRIEF AND ORAL ARGUMENT
FOR APPELLEE THE NORTHSIDE
NEIGHBORHOOD ASSOCIATION,
INC.:

-20-

T. Bruce Simpson
Lexington, Kentucky

BRIEF FOR APPELLEES THE
ESTATE OF ROBERT
LESLIE ROSENBAUM,
DECEASED, BY HIS PERSONAL
REPRESENTATIVE, IF ANY, AND
LINDA GOSNELL:

H. Caywood Prewitt, Jr.
Lexington, Kentucky